NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0066n.06
Filed: January 25, 2006

**No. 04-4159**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JACOB WINKELMAN, a minor, by and through his parents and legal guardians, JEFF and SANDEE WINKELMAN, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) ) | NORTHERN DISTRICT OF OHIO |
| PARMA CITY SCHOOL DISTRICT, | ) ) ) | |
| Defendant-Appellee. | ) | |

Before: SILER and SUTTON, Circuit Judges; SHARP, District Judge.[*]

PER CURIAM. This interlocutory appeal arises from the denial of a motion for a preliminary injunction regarding the stay-put placement for a child under the Individuals with Disabilities Education Act (IDEA). *See generally* 20 U.S.C. § 1400, *et seq.*; 20 U.S.C. § 1415(j) (stay-put provision). *See also Winkelman v. Parma City Sch. Dist.*, No. 04-4159, at *2 (6th Cir. Nov. 4, 2004) (order denying motion to dismiss and motion for injunction pending appeal and construing the *pro se* motion for a temporary restraining order in this case as a motion for a preliminary injunction); *Wagner v. Bd. of Educ. of Montogmery County*, 335 F.3d 297 (4th Cir. 2003) (treating a request for a change in a child's stay-put placement as a request for a preliminary

---

[*]The Honorable Allen Sharp, United States District Judge for the Northern District of Indiana, sitting by designation.

injunction). Because the primary argument raised on appeal was not raised before the district court in the motion seeking preliminary relief and because the district court did not otherwise abuse its discretion in denying the motion, we affirm.

I.

Jacob Winkelman is an eight-year-old child with autistic spectrum disorder, a condition that qualifies him for a "free appropriate public education" through an "individualized educational program" (IEP) under the IDEA. More than four years ago, in September 2001, Jacob's parents, Jeff and Sandee Winkelman, met with officials of the Parma City School District and together they decided that placing Jacob in preschool at the Achievement Center for Children would meet the IDEA's requirements and Jacob's needs. Jacob attended the Achievement Center during the 2001–02 and 2002–03 school years. At that time the Achievement Center operated a preschool program designed to serve children ages 3 to 6. IHO Interim Order at 1 (Aug. 27, 2003).

In preparation for the 2003–04 school year, when Jacob would be old enough to transition from preschool to kindergarten, the Winkelmans met with Parma City School District officials on June 2, 2003, to discuss the district's proposed IEP for Jacob. At that meeting, the school district proposed an IEP that would place Jacob in kindergarten at Pleasant Valley Elementary School. Dissatisfied with this proposal, which the Winkelmans believed was not "specifically designed to meet [Jacob's] special educational needs," Winkelman Pro Se Br. at 3, the Winkelmans filed a request for an administrative hearing to challenge the school district's proposed IEP.

At the same time, the parents and school district disagreed about which school should be designated as Jacob's "stay-put" placement, which is to say the school that Jacob would attend during the pendency of the administrative hearing and any subsequent appeals. On August 27, 2003, Impartial Hearing Officer (IHO) Joy M. Freda issued an "Interim Order" treating the Achievement Center as Jacob's "current educational placement" and designating it on an interim basis as his stay-put placement. IHO Interim Order at 4–5 (Aug. 27, 2003); *see also* 20 U.S.C. 1415(j) ("[D]uring the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child."). Although IHO Freda stated that "at the present time, services offered at the Achievement Center [ ] would continue to offer value to [Jacob]," she also recognized that "the Achievement Center will not be addressing 'kindergarten academics,' and it is entirely possible that, in the future — perhaps as soon as five or six months — the parents or school district may conclude [that] such placement is no longer appropriate." IHO Interim Order at 5 (Aug. 27, 2003). If during this brief period of time the parents or school district determined that the Achievement Center was no longer an appropriate placement for Jacob, IHO Freda urged the parties to "work collaboratively to fashion a mutually-acceptable compromise for [Jacob's] benefit." *Id.* at 5–6. Ultimately, Jacob's parents did not place Jacob in the Achievement Center for the 2003–04 school year. They instead enrolled him at the Monarch School of Bellefaire JCB, a private school specializing in the education of students with autistic spectrum disorders.

On February 19, 2004, IHO Freda ruled on the merits of Jacob's underlying IDEA claim. In a 56-page decision she found that the school district's proposed IEP at Pleasant Valley "offer[ed]

an appropriate educational program and placement [for Jacob]" and that "the [Winkelmans] [we]re not entitled to reimbursement for tuition and transportation costs in association with their private placement of [Jacob] at the Monarch School." IHO Op. at 32 (Feb. 19, 2004). The Winkelmans administratively appealed this decision.

On June 2, 2004, a State Level Review Officer affirmed IHO Freda's decision. Acting *pro se*, the Winkelmans then filed a lawsuit in federal district court, challenging these administrative decisions.

On August 23, 2004, the Winkelmans moved for a preliminary injunction in the district court designating the Monarch School as Jacob's stay-put placement. Winkelman Mot. for Inj. at 1. The school district responded by indicating that Pleasant Valley was the appropriate stay-put placement. *See* Parma Mem. in Opp. to Mot. for Inj. at 4, 11. On August 24, 2004, the district court denied the motion. D. Ct. Order at 4 (Aug. 24, 2004). Noting that the Winkelmans had unilaterally removed Jacob from the Achievement Center, the court concluded that Jacob's stay-put placement should be Pleasant Valley. *Id.* Following the denial of a motion for reconsideration, the Winkelmans filed this interlocutory appeal.

On June 2, 2005, while the Winkelmans' interlocutory appeal was pending in this court, the district court ruled on the merits of Jacob's underlying IDEA claim. The court agreed with the IHO and the State Level Review Officer, determining that the school district's proposed plan did not violate the IDEA. *See* D. Ct. Op. at 20 (June 2, 2005). The Winkelmans appealed that decision to

this court, again acting *pro se*. On November 4, 2005, a different panel of judges from this court

issued an order dismissing that appeal unless counsel was retained in the case within 30 days.

*Winkelman v. Parma City Sch. Dist.*, No. 05-3886 (6th Cir. Nov. 4, 2005); *see Cavanaugh v.*

*Cardinal Local Sch. Dist.*, 409 F.3d 753, 756 (6th Cir. 2005) (stating that non-lawyer parents may

not represent a minor child in an IDEA action in federal court). The Winkelmans then sought, and

received from the United States Supreme Court, a stay of the November 4, 2005 order. That stay

remains in effect "pending the timely filing and disposition by [the Supreme] Court of a petition for

a writ of certiorari," *Winkelman v. Parma City Sch. Dist.*, No. 05A506 (U.S. Dec. 12, 2005), on the

issue of whether parents may represent their children *pro se* in federal court actions filed under the

IDEA.

## II.

Before addressing whether the district court erred in denying the Winkelmans' request for

a preliminary injunction regarding Jacob's stay-put placement, we pause to emphasize that the

Supreme Court's stay of this court's November 4, 2005 order does not prohibit us from resolving

this separate appeal. The November 4th order deals with the merits appeal and with whether the

IDEA compels Jacob's parents to obtain counsel before proceeding with that appeal. In this case,

by comparison, the Winkelmans seek interim relief regarding Jacob's stay-put placement, and they

have hired counsel to handle this appeal. After the Supreme Court issued its November 4th stay

order, we nonetheless asked the Winkelmans whether they wished to move forward with this appeal.

Through counsel, the Winkelmans not only gave us permission to resolve this independent appeal

but also indicated that they would prefer us to do so. At oral argument on December 21, 2005, the Winkelmans again expressed their preference that we move forward with this appeal and the school district indicated that it did not object.

The standard for obtaining a preliminary injunction is well established. We look to four factors "in determining the appropriateness of a preliminary injunction: (1) whether the plaintiffs are likely to succeed on the merits, (2) whether the plaintiffs will suffer irreparable injury in the absence of an injunction, (3) whether granting the injunction will cause substantial harm to others, and (4) whether the issuance of the injunction is in the public interest." *Michigan State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). On appeal from the denial of a preliminary injunction, we ask whether the district court abused its discretion in denying the motion. *Id.*

The Winkelmans argue that the district court should have ordered the school district to treat the Achievement Center as Jacob's stay-put placement and, when that school became unavailable, should have changed his stay-put placement to the Monarch School. The problem with this argument is that the Winkelmans never presented it to the district court in seeking a preliminary injunction. At issue before the district court was whether (in the words of the Winkelmans) "Jacob's current placement at the Monarch School should be designated as the stay-put placement" during the pendency of his appeals because (in the words of the Winkelmans) "if this case w[ere] ripe for summary judgment today, the Monarch School would be designated as Jacob's stay-put placement." Winkelman Mot. for Inj. at 5–6. In their motion the Winkelmans explained that they "gave notice on or about August 12, 2003 . . . [that they were] plac[ing] Jacob at the Monarch School" because

"of the failure [of] Parma to follow the mandates of the IDEA and develop an IEP that would provide educational benefit to Jacob." *Id.* at 3. They then argued that the Monarch School should be the stay-put placement because "the IHO and [State Level Review Officer] both misinterpreted and misapplied the IDEA during the administrative proceedings." *Id.* at 18 n.2. Nowhere in that motion, however, did the Winkelmans argue that the Achievement Center was the appropriate stay-put placement for Jacob and that it became unavailable because Jacob was denied admission—the position they now take on appeal. *See* Winkelman Letter Br. Because this argument was not made before the district court and because the district court was asked only whether the Pleasant Valley Elementary School of the Parma City School District or the private Monarch School should be treated as Jacob's stay-put placement during the resolution of the merits of the IDEA claim, it is waived. *See Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) ("Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order.") (internal quotation omitted). In resolving an emergency motion for preliminary relief, a district court cannot fairly be accused of abusing its discretion in rejecting an argument that was never made. Because the Winkelmans make no other tenable arguments for reversing the district court's decision and because (as they acknowledged at oral argument) they cannot tenably claim at this point that they have a likelihood of success on the merits (in view of the three merits decisions against them), we conclude that the district court's preliminary-injunction ruling did not amount to an abuse of discretion. Of course, the Winkelmans' other appeal awaits resolution by another panel of this court. If the Winkelmans prevail in that appeal and establish that the proposed IEP at Pleasant Valley is inadequate under the IDEA, then that ruling may well provide

the family considerable relief. *See, e.g.*, *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 763 (6th Cir. 2001) (noting that parents may be entitled to reimbursement for the costs of a child's education incurred during the review of an IDEA claim if the reviewing court finds that the school district's proposed public placement violated the IDEA and that the private school placement was appropriate under the IDEA).

## III.

For these reasons, we affirm the district court's denial of the Winkelmans' motion for a preliminary injunction.